IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2015 FEB 13  AM 10: 39

UNITED STATES OF AMERICA

-vs-                                                                                   CAUSE NO. A-14-CR-300-SS-1

OSCAR ARMANDO AVILES-JAIMES (1)

_____

# ORDER

BE IT REMEMBERED on this day, the Court reviewed the file in the above-styled cause, and specifically Defendant Oscar Armando Aviles-Jaimes's Motion to Suppress [#299] and the Government's Amended Response [#344] thereto. Having reviewed the documents, the governing law, and the file as a whole, the Court now enters the following opinion and orders DENYING the motion.

## Background

Defendant Oscar Armando Aviles-Jaimes was indicted on October 7, 2014, for conspiracy to possess with intent to distribute and possession with intent to distribute a controlled substance. Redacted Indictment [#158] at 1–3. Defendant's motion to suppress concerns ten kilograms of cocaine seized by police during a search of his vehicle on August 27, 2014.[1]

According to the United States, the investigation leading to the indictment in this case began in October 2013,[2] when confidential informants informed authorities Defendant and others were

---

[1] Plaintiff indicates the search took place on September 3, 2014. The warrant, however, is dated August 26, 2014, and the Government executed the warrant that evening. *See* Am. Resp. [#344-1] Ex. 1 (Search Warrant) at 4.

[2] The affidavit in support of the warrant states the investigation of Defendant began in March 2014. Am. Resp. [#344-2] Ex. 1A (Warrant Aff.) at 5. The differing dates are not material to the Court's decision on this motion.

distributing cocaine in the Austin, Texas area.[3] Investigation of the confidential sources' information allegedly led to discovery of "a multi-kilogram cocaine distribution ring[.]" Am. Resp. [#344] at 2. Pursuant to that investigation, agents and officers wiretapped the telephones of persons, including Defendant, who were suspected of involvement in the ring, and recorded conversations between Defendant and others concerning delivery of cocaine to customers and transportation of drug proceeds into Mexico.

The United States represents on August 26, 2014, a confidential source reported Defendant had received a shipment of cocaine earlier that day and had eleven kilograms remaining for distribution. That same day, surveilling agents observed Valeria Cuenca, a co-defendant in this action, arrive at Defendant's home, located at 1612 Chasewood Drive, Austin, Texas 78727. Cuenca entered Defendant's home and exited with two kilograms of cocaine.

Agents followed Cuenca and watched her deliver one of the kilograms to a known "stash location" utilized by co-defendant Gervacio Morales. After the first delivery was complete, Cuenca stopped at a Starbucks, apparently aware she was under surveillance. Agents arrested Cuenca and took possession of the other kilogram of cocaine. Cuenca told agents she wanted to cooperate and informed them she had been delivering cocaine and picking up drug money for Defendant for approximately one month. Additionally, she told agents Defendant had another ten kilograms of cocaine inside his home at 1612 Chasewood, and stated Defendant stored the cocaine in his bedroom.

---

[3] Facts in this background summary are taken from the Government's Response to Defendant's motion and the exhibits attached thereto.

Based on their previous surveillance and Cuenca's statements, agents obtained the state search warrant at issue in this motion. *See* Am. Resp. [#344-1] Ex. 1 (Search Warrant). Agent Billy Mims executed the affidavit for the search warrant. *See id.* [#344-2] Ex. 1A (Warrant Aff.). In explaining the place to be searched, Agent Mims's affidavit specifically describes Defendant's home and four vehicles which, according to a handwritten notation, "have been observed at Avila-Jaimes['s] residence & utilized by Avila-Jaimes and other associates": a gray BMW, a black Ford Mustang, a silver M5, and a maroon Cadillac. *Id.* at 1–2. The probable cause statement in Mims' affidavit recites the events of August 26, 2014, set forth above.

A Travis County District Court Magistrate Judge signed and issued the search warrant on August 26, 2014, at 9:36 p.m. The warrant authorized the search of 1612 Chasewood, the BMW, Ford Mustang, M5, and Cadillac, and "all other buildings, structures, places and vehicles on said premises and within the curtilage, found to be under the control of [Defendant] and in, on, or around which [Defendant] may reasonably reposit or secrete property which is the object of the search[.]" Search Warrant at 2.

That evening, agents returned to Defendant's address and executed the search warrant. Inside Defendant's home, agents found "packaging materials and other evidence of drug distribution," a loaded .40 caliber handgun, and $82,312.00 cash, but did not locate the ten kilograms of cocaine Cuenca had described. Am. Resp. [#344] at 4. Agents then proceeded to search "the vehicles parked on the premises of the house." *Id.* A white Chevrolet Avalanche—which was not specifically described in Agent Mims's affidavit or in the search warrant—was parked in the driveway of Defendant's home. The Avalanche belongs to Defendant, although it is not clear whether the agents executing the search warrant knew that at the time. *See* Mot. Suppress [#299-2] (Memo in Support)

at 4. According to the United States, when agents approached the Avalanche, they noticed a black duffel bag on the backseat which "appeared to have several brick-shaped objects contained therein." *Id.* at 5. Agents opened the Avalanche and retrieved the black duffel bag, which contained ten kilograms of cocaine.

## Analysis

Defendant argues the cocaine seized from his Avalanche should be suppressed because the affidavit contains no facts providing probable cause for the search and a search of the Avalanche was outside the scope of the warrant. The Government disagrees, and further contends even if the warrant was somehow invalid, the search remained valid under both the good faith and automobile exceptions to the warrant requirement. The Court concludes a search of the Avalanche was within the scope of the warrant and the warrant was supported by probable cause. Further, the Court finds even assuming the warrant is invalid, the good faith exception to the warrant requirement applies. The Court therefore declines to determine whether the automobile exception is also applicable.[4]

The Court agrees with the United States that the search warrant authorized a search of the Avalanche. The Supreme Court held in *United States v. Ross*, 456 U.S. 798 (1982), that a lawful search of fixed premises extends to every part of the premises in which the object of the search may

---

[4] The question whether the automobile exception applies to a vehicle parked in a driveway, as Defendant's Avalanche was here, is "a significant unresolved issue, primarily because, forty years ago, the Supreme Court held that the automobile exception did not justify the warrantless search of the defendant's car parked in his own driveway." *United States v. Goncalves*, 642 F.3d 245, 250 (1st Cir. 2011) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 459–62 (1971)). It is unclear what force *Coolidge* retains today for several reasons: first, the *Coolidge* Court fractured, producing no majority opinion on the driveway search issue; second, the plurality's condemnation of the driveway search was "highly fact-specific"; third, post-*Coolidge*, the Court has frequently emphasized the diminished expectation of privacy in a vehicle and upheld searches under the automobile exception; and finally, a number of Circuits have upheld warrantless driveway searches where probable cause exists. *Id.* at 250–51. The Fifth Circuit, however, has continued to express doubt concerning application of the exception to driveway searches. *See United States v. Fields*, 456 F.3d 519, 524–25 (5th Cir. 2006) ("[The] automobile exception may not apply when a vehicle is parked at the residence of the criminal defendant challenging the constitutionality of the search." (emphasis added)).

be found, despite the fact that separate acts of opening or entry may be required to conduct the search. *Id.* at 820–21. Building from *Ross*, the Fifth Circuit has repeatedly held a warrant authorizing a search of "the premises" includes permission to search vehicles parked on the premises.[5] *See, e.g., United States v. Singer*, 970 F.2d 1414, 1417–18 (5th Cir. 1992) (rejecting defendant's argument a search warrant for his residence did not encompass two vehicles parked on his property because the search warrant did not specifically describe the vehicles); *United States v. Freeman*, 685 F.2d 942, 955 (5th Cir. 1982) (holding warrant which authorized a search of "the premises known as 256 Seadrift Road" was "sufficiently particular to permit a search of [the defendant's] Jeep . . . parked on the premises off the street and close to the house"). Here, the search warrant specifically authorized a search of Defendant's residence at 1612 Chasewood, and the Avalanche, which belonged to Defendant, was parked in the driveway when the authorities executed the search warrant. Consequently, under *Singer* and *Freeman*, the search warrant permitted a search of the Avalanche.

Defendant nevertheless argues the search cannot be justified as a search of "premises" as in the cases cited above because the agents executing the warrant did not know the Avalanche belonged to Defendant. Defendant cites no authority for this proposition, and the Court has found none. The Tenth Circuit, however, has rejected the same argument, noting the case to do so was even stronger because the search warrant authorized the search of the defendant's residence and "any other buildings described or found in the curtilage of the residence or vehicles located thereon[.]" *Ames*

---

[5] Those decisions comport with the principle that a warrant authorizing the search of a residence also permits the search of structures, vehicles, or areas within the curtilage of the residence not specifically described in the warrant. *See, e.g., Mack v. City of Abilene*, 461 F.3d 547, 553–54 (5th Cir. 2006) (explaining search of a vehicle might be constitutional if it was parked within the curtilage of the residence for which the authorities had a search warrant).

*v. Franklin*, 163 F. App'x 729, 735 (10th Cir. 2006) (unpublished). Similarly, the search warrant at issue authorizes the search of Defendant's residence and vehicles on the premises or within the curtilage of the residence. Defendant's argument is likewise rejected.

Relatedly, Defendant claims the specific descriptions of the BMW, Ford Mustang, M5, and Cadillac—and lack of description of the Avalanche—in the warrant affidavit indicate there was no showing of probable cause to search the Avalanche before the magistrate, citing *State v. Barnett*, 788 S.W.2d 572 (Tex. Crim. App. 1990), in support. The Court is unpersuaded. The *Barnett* defendant was arrested when he drove up to one Paula Byrd's home while police were executing a search warrant covering Byrd's residence, which authorized a search of "all vehicles" on the premises. The *Barnett* defendant was not named in the warrant affidavit, nothing in the affidavit suggested Byrd owned multiple vehicles, and nothing in the affidavit suggested contraband might be located in *any* vehicle at all, no matter to whom it belonged—but the defendant's vehicle was nevertheless searched. The court was troubled by what it saw as a warrant "authorizing a 'search zone' which permitted the indiscriminate probe of all things and persons passing through it" and that the defendant's "untimely arrival into this zone . . . was believed to sanction the search[.]" *Id.* at 577. Thus, the Court concluded, "more" than mere presence of a vehicle on suspected premises was required to authorize a search, and "the particular description of vehicles in the affidavit [was] necessary." *Id.* at 575.

Here, unlike in *Barnett*, the warrant affidavit clearly named Defendant; specifically indicated the contraband sought might be contained in a vehicle; described four different vehicles either owned by or under Defendant's control, suggesting Defendant owned or controlled multiple vehicles; included in its description of suspected places "all other . . . vehicles on said premises and within the

curtilage, which are found to be under the control of" Defendant; and noted vehicles had been observed at Defendant's residence and Defendant and his known associates had been observed utilizing those vehicles. Warrant Aff. at 2. The Court concludes the "more" lacking in *Barnett* was present in the affidavit supporting the warrant in this case. The search conducted here was not an indiscriminate search of a vehicle which randomly arrived on-scene unsupported by facts establishing probable cause. Moreover, the Court can see no reason why a description of the make and model of several of the vehicles police "expected to be" at Defendant's residence during the search would place a vehicle both actually there and belonging to Defendant outside the warrant's legitimate scope, particularly where the Fifth Circuit has held a vehicle within the scope of a search warrant where the warrant did not mention vehicles at all. *Singer*, 970 F.2d at 1417–18. Defendant's argument to the contrary is rejected.

Even if the search of the Avalanche was somehow invalid under the existing search warrant, however, the good faith exception to the warrant requirement would likely apply. Under the good faith exception, "[i]f an officer's 'reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues [is] objectively reasonable,' a court need not suppress the fruits [of the search]." *United States v. Flanders*, 468 F.3d 269, 271 n.2 (5th Cir. 2006) (quoting *United States v. Leon*, 468 U.S. 897, 922 (1984)) (second alteration in original). Only in the following "exceptional circumstances" is the good faith exception inapplicable to the execution of a warrant: (1) when the magistrate issued it in reliance on a deliberately false affidavit; (2) when the magistrate abandons his or her judicial role and fails to perform in a neutral or detached fashion; (3) when the warrant is based on an affidavit so lacking in indicia of probable cause as to render an officer's belief in it unreasonable; and (4) when the warrant is so facially deficient, as by failing to

particularize the place to be searched or the items to be seized, that no reasonable officer could believe it valid. *Leon*, 468 F.3d at 923.

While Defendant does not specifically identify which of these circumstances he believes applies to this case, it appears to the Court his objections regarding the absence of specific description of the Avalanche and ownership of the Avalanche go to circumstances (3) and (4). Neither circumstance applies. To the extent Defendant contends the affidavit was "so lacking in indicia of probable cause" to render reliance on the warrant unreasonable, that argument is rejected for the same reasons stated above in discussing the affidavit's descriptions of vehicles. Finally, as "a warrant issued for 'the premises' includes vehicles parked on the premises[,]" the warrant was facially valid. *United States v. Cervantes*, 251 F.3d 157, at *1 (5th Cir. 2001) (unpublished) (holding good faith exception applicable). It thus appears to the Court the agents relied in good faith on the warrant in searching the Avalanche, and the exception would apply, were a valid warrant not present.

A final note: the duffel bag containing the ten kilograms of cocaine was visible through the window of the Avalanche, and the agent who approached the Avalanche noted "that the bag appeared to have several brick-shaped objects contained therein." Am. Resp. [#344] at 5. The agents who executed the search warrant were aware of drug activity at Defendant's residence. Earlier that day, agents had observed co-defendant Cuenca obtain two kilograms of cocaine from Defendant, and Cuenca then told agents Defendant had ten additional kilograms of cocaine at his address. During the search of Defendant's residence, no additional cocaine turned up, although agents found evidence of drug packaging, a loaded gun, and a large amount of cash. Based on the totality of the circumstances, it further appears to the Court that agents had probable cause to believe the duffel bag, which was visible from outside the Avalanche and appeared to contain brick-shaped

objects, contained the contraband they were looking for. *See United States v. Buchanan*, 70 F.3d 818, 826 (5th Cir. 1995) ("The incriminating nature of an item is 'immediately apparent' if the officers have probable cause to believe that the item is either evidence of a crime or contraband.").

Consequently, the Court concludes no Fourth Amendment violation occurred. The search of Defendant's Avalanche was proper, and the ten kilograms of cocaine seized remains admissible.

## Conclusion

Accordingly,

IT IS ORDERED that Defendant Oscar Armando Aviles-Jaimes's Motion to Suppress [#299] is DENIED.

SIGNED this the 12th day of February 2015.

*/s/ Sam Sparks*
SAM SPARKS
UNITED STATES DISTRICT JUDGE